**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **ROBERT VITEK,** | * |
| Plaintiff, | * |
| v. | * |
| | CIVIL NO. JKB-20-274 |
| **FREIGHTQUOTE.COM, INC.,** *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Plaintiff Robert Vitek sued Defendant Freightquote.com, Inc. ("Freightquote"), and its corporate parent, Defendant C.H. Robinson Worldwide, Inc. ("C.H. Robinson"), alleging that Freightquote's negligence caused his legs to be crushed in an accident. After removing the matter to federal court, Defendants moved to dismiss (ECF No. 7) on two grounds. First, both Defendants argue that Vitek's negligence claims are preempted by the Federal Aviation Administration Authorization Act. Second, C.H. Robinson argues that Vitek has failed to state a claim against it. The motion is fully briefed and no hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, the motion to dismiss will be granted as to C.H. Robinson and denied as to Freightquote.

*I.    Background*

Vitek is a Maryland resident and was formerly a freight delivery driver for R&L Carriers Shared Services, LLC ("R&L Carriers"). (Compl. ¶¶ 1, 5, ECF No. 1-1.) Freightquote is a Delaware corporation with its principal place of business in Missouri. (Not. Removal ¶ 10, ECF No. 1.) According to the Complaint, Freightquote operates as "an intermediary broker who enlist[s] the services of various freight delivery carriers to deliver freight from a shipper to a

receiver." (Compl. ¶ 6.) C.H. Robinson is Freightquote's corporate parent and is a Delaware corporation with its principal place of business in Minnesota. (Not. Removal ¶ 11.)

This litigation relates to injuries Vitek suffered on January 4, 2017, in the course of making a delivery brokered by Freightquote. According to the Complaint, Freightquote "was contracted by Westview Manufacturing to find a carrier to deliver a gazebo to a residential customer." (Compl. ¶ 8.) Freightquote then hired R&L Carriers to deliver the gazebo. (*Id.* ¶ 10.) However, Freightquote failed to forward to R&L Carriers special instructions Freightquote had received from Westview Manufacturing, which warned that in order to "minimize risk to life and limb," the gazebo should be "split into three smaller packages and no less than three individuals should be involved in the delivery." (*Id.* ¶¶ 9, 13.) On January 4, 2017, R&L Carriers assigned Vitek to deliver the gazebo. (*Id.* ¶ 12.) Unaware of Westview Manufacturing's special instructions, Vitek attempted to unload the gazebo "in one crate weighing 2080 pounds." (*Id.* ¶ 15.) "[W]ithout warning, the crate toppled off the lift striking the Plaintiff on the head, knocking him to the ground and then fell on both of his legs, crushing them." (*Id.* ¶ 17.) The Complaint does not allege that C.H. Robinson had any role in the events at issue.

Vitek brought suit against Freightquote and C.H. Robinson in the Circuit Court for Anne Arundel County, Maryland on December 31, 2019, claiming a single count of negligence against each Defendant and seeking over seventy-five thousand dollars ($75,000) in damages. (Compl., ECF No. 1-1.) Defendants removed the matter to federal court on diversity grounds. (Not. Removal, ECF No. 1.) Defendants then moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 7.)

Defendants' motion raises two arguments for dismissal—one applicable to both Defendants, and one applicable just to C.H. Robinson. First, Defendants contend that the Federal

Aviation Administration Authorization Act ("FAAAA" or "the Act") completely preempts state common law negligence claims, including claims for personal injuries. They argue that because the FAAAA's preemption clause "expressly prohibits enforcement of state laws 'related to' a 'service' of any 'broker' with respect to the 'transportation of property,'" Vitek's claims are preempted. (Mot. Dismiss Mem. at 5, ECF No. 7-1.) Vitek vigorously contests this issue. Second, C.H. Robinson contends that Vitek has failed to state a claim against it, since he has not pled any tortious conduct on C.H. Robinson's part, nor made allegations that would allow the corporate veil to be pierced. Vitek concedes this point, declaring himself "ambivalent as to whether Defendant, C.H. Robinson Worldwide, remains as a Defendant in this case." (Opp'n Mot. Dismiss ¶ 2, ECF No. 9.)

## II. *Legal Standard*

"In considering a motion to dismiss" pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## III. *FAAAA Preemption*

Starting with Defendants' preemption argument, the Court finds that the FAAAA does not prevent Vitek from pursuing his common law personal injury claims. Though the FAAAA's preemption clause is broad, the statutory language does not indicate that it was "the clear and

manifest purpose of Congress" to leave individuals maimed as the result of a broker's negligence without a remedy at law. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

Congress passed the Federal Aviation Administration Authorization Act of 1994 to deregulate the trucking industry. "Concerned that state regulation 'impeded the free flow of trade, traffic, and transportation of interstate commerce,'" Congress included in the Act a preemption clause that was designed to "displace '*certain* aspects of the State regulatory process.'" *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 263 (2013) (emphasis in original) (quoting FAAAA § 601(a), 108 Stat. 1605). This preemption clause, codified at 49 U.S.C. § 14501(c)(1), provides that with few enumerate exceptions, a state:

> may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

Notably, Congress copied the preemption language of 49 U.S.C. § 14501(c)(1) verbatim from 49 U.S.C. § 41713(b)(4)(A), "the air-carrier pre-emption provision of the Airline Deregulation Act of 1978" ("ADA"). *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008). In doing so, Congress expressed the clear intent that the preemptive effect of § 14501(c)(1) be interpreted as coextensive with that of § 41713(b)(4)(A). *See id.; see also* H.R. Rep. No. 103–677, at 83 (1994) (Conf. Rep.), *reprinted in* 1994 U.S.C.C.A.N. 1715, 1755 (noting the FAAAA's preemption provision "is identical to the preemption provision deregulating air carriers . . . and is intended to function in the exact same manner with respect to its preemptive effects."). Neither statute mentions personal injuries or provides a federal substitute for common law negligence actions.

The question posed by Defendants' motion is whether the § 14501(c)(1) prohibition is so broad that it preempts Vitek's personal injury claim.  In any preemption analysis, "the purpose of Congress is the ultimate touchstone." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal citations and quotations omitted).  Therefore, a court must "begin with the words of the statute which 'necessarily contain[] the best evidence of Congress' pre-emptive intent.'" *Gaines Motor Lines, Inc. v. Klaussner Furniture Indus., Inc.*, 734 F.3d 296, 306 (4th Cir. 2013) (alterations in original) (quoting *CSX Transp.*, 507 U.S. at 664).  As a baseline principle, "a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption . . . unless it is 'the clear and manifest purpose of Congress.'" *CSX Transp.,* 507 U.S. at 664 (quoting *Rice*, 331 U.S. at 230).  Further, a court should be particularly hesitant to find preemption of common law tort claims if a statute provides no federal substitute, since "it is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct." *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 251 (1984).

Though the Supreme Court has not ruled on whether § 14501(c)(1) preempts common law negligence actions for personal injuries, it has addressed § 14501(c)(1) in more general terms.  The Supreme Court has broadly construed the "phrase 'related to' [as] embrac[ing] state laws 'having a connection with or reference to' carrier 'rates, routes, or services,' whether directly or indirectly." *Dan's City*, 569 U.S. at 260 (quoting *Rowe*, 552 U.S. at 370).  However, the Supreme Court has also specified that "§ 14501(c)(1) does not preempt state laws affecting carrier prices, routes, and services 'in only a tenuous, remote, or peripheral . . . manner.'" *Id.* at 261 (alterations in original) (quoting *Rowe*, 552 U.S. at 371).  More broadly, the Supreme Court has also cautioned against reading preemption clauses such as § 14501(c)(1) "with an 'uncritical literalism.'" *Id.* at 260

(quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655–56 (1995)).

While no federal appellate court has yet addressed whether the FAAAA's preemption clause prohibits personal injury claims, multiple circuit courts have found that the parallel ADA clause does not preempt such actions. *See, e.g., Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1266 (9th Cir. 1998), *opinion amended on denial of reh'g*, 169 F.3d 594 (9th Cir. 1999) (Congress did not intend the ADA "to immunize the airlines from liability for personal injuries caused by their tortious conduct"); *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334 (5th Cir. 1995). Though some circuit courts have grounded this ruling in a distinction between an air carrier's "services" and "operations" inapplicable here, others have taken the view that the key "inquiry is whether a common law tort remedy frustrates deregulation by interfering with competition through public utility-style regulation," and have reasoned that a common law cause of action which "does not have a regulatory effect [is] 'too tenuous, remote, or peripheral' to be preempted." *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 194 (3d Cir. 1998) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992)). Circuit courts analyzing the preemptive effect of the FAAAA outside of the personal injury context have similarly reasoned that a "generally applicable background regulation in an area of traditional state power that has no significant impact on[] prices, routes, or services" will not be preempted. *California Trucking Ass'n v. Su*, 903 F.3d 953, 961 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1331 (2019).

Finally, a number of district courts have directly addressed whether personal injury actions are preempted by § 14501(c)(1). Though Defendants claim that there is a "trend" towards district courts finding preemption, (Mot. Dismiss Mem. at 10), it would be more accurate to say that after decades in which a "near-universal" consensus against preemption prevailed, the matter has

recently come into dispute.  *Hernandez v. El Paso-Los Angeles Limousine Express, Inc.*, Civ. No. RSWL-14-8650, 2014 WL 7149501, at *1 (C.D Cal. 2014).  Indeed, Defendants' arguments have been rejected in numerous on-point decisions published in 2019 and 2020.  *See, e.g., Nyswaner v. C.H. Robinson Worldwide Inc.*, 353 F. Supp. 3d 892 (D. Ariz. 2019); *Gloria Campos, et al. v. Benny Whitehead Logistics, LLC*, Civ. No. JFW-20-395, 2020 WL 1486107 (C.D. Cal. Mar. 27, 2020); *Huffman v. Evans Transp. Servs., Inc.*, Civ. No. H-19-0705, 2019 WL 4143896 (S.D. Tex. Aug. 12, 2019), *report and recommendation adopted*, Civ. No. 19-0705, 2019 WL 4142685 (S.D. Tex. Aug. 28, 2019).  Additionally, the only two decisions on the issue from district courts within the Fourth Circuit have rejected Defendants' arguments.  *See Gilley v. C.H. Robinson Worldwide, Inc.*, Civ. No. 18-00536, 2019 WL 1410902 (S.D. W. Va. March 28, 2019); *Mann v. C.H. Robinson Worldwide, Inc.,* Civ. No. 16-00102, 2017 WL 3191516 (W.D. Va. July 27, 2017).[1]

This Court agrees with the majority of district courts that have found that common law personal injury actions like Vitek's are too attenuated from the deregulatory purpose of the FAAAA to be preempted.  Enforcing a generalized common law duty of care against a broker whose conduct directly causes a personal injury can be expected to impact the way brokers provide their services in at most a "tenuous, remote, or peripheral" manner and cannot be expected to have a "significant impact" on "prices, routes, or services." *California Trucking*, 903 F.3d at 961.  This is particularly true when it comes to straightforward common law negligence claims like Vitek's, which focuses solely on the broker's alleged failure to pass along special instructions from shipper

---

[1] Though Defendants argue that *AIG Europe Ltd. v. Gen. Sys., Inc*., is on point, that case is distinguishable on the ground that it involved a dispute between a pharmaceutical company and broker related to stolen cargo, not a personal injury claim brought by an individual.  Civ. No. RDB-13-0216, 2014 WL 3671566 (D. Md. July 22, 2014).  Commercial parties in such situations have the opportunity to protect themselves through contract, which is unavailable to third parties maimed by a broker's negligence.  Further, legal intervention in commercial relationships is much more akin to a state "substitut[ing] its own governmental commands for competitive market forces" than is providing maimed individuals the right to seek compensation.  *Dan's City*, 569 U.S. at 263 (quoting *Rowe,* 552 U.S. at 372). *C.f. Nyswaner*, 353 F. Supp. 3d at 896 (drawing this distinction).

to deliverer, without invoking any more complex duties. In the negligent hiring context, Defendants can credibly argue that the imposition of liability risks a pseudo-regulatory effect by "reshap[ing] the level of service a broker must provide in selecting a motor carrier." *Miller v. C.H. Robinson Worldwide, Inc.*, Civ. No. MMD-WGC-317-408, 2018 WL 5981840, at *4 (D. Nev. Nov. 14, 2018) (finding negligent hiring claim preempted in part because it was "not a run of the mill personal injury claim"). Defendants can raise no such specter here.

Moreover, at a higher level, the Court cannot find that it was Congress' clear and manifest purpose to preempt Vitek's claim when Congress intentionally used in § 14501(c)(1) language that in the ADA context has long been interpreted as permitting just this sort of lawsuit. Congress' purpose in enacting § 14501(c)(1) was to prevent a state from "substitut[ing] its own governmental commands for competitive market forces in determining (to a significant degree) the services that [brokers and] motor carriers will provide"—not to grant brokers immunity from all liability for harm caused by their negligence. *Dan's City*, 569 U.S. at 263 (quoting *Rowe,* 552 U.S. at 372). Particularly given that Congress did not provide any alternative "judicial recourse for those injured by [a broker's] illegal conduct" it would be deeply counterintuitive to read Congress' reuse of the ADA's preemption language as preventing Vitek from pursuing any remedy for Defendants' alleged negligence.[2] *Silkwood*, 464 U.S. at 251. Indeed, reading the statute in that manner would

---

[2] Defendants' argument that the FAAAA's lack of any liability insurance requirement for brokers indicates that Congress intended § 14501(c)(1) to have a broader preemptive effect than § 41713(b)(4)(A) is clever but unconvincing. Congress' inclusion of a liability insurance requirement in the ADA informs the proper understanding of what Congress intended when it declared preempted any "law, regulation, or other provision having the force and effect of law related to a price, route, or service" in § 41713(b)(4)(A). But the lack of any corresponding requirement for brokers does not draw into doubt that § 14501(c)(1) was "intended to function in the exact same manner [as § 41713(b)(4)(A)] with respect to its preemptive effects." H.R. Rep. No. 103–677, at 83 (1994) (Conf. Rep.), *reprinted in* 1994 U.S.C.C.A.N. 1715, 1755. *C.f. Montes de Oca v. El Paso-Los Angeles Limousine Express., Inc*., Civ. No. RSWL-14-9230, 2015 WL 1250139, at *2 (C.D. Cal. Mar. 17, 2015) (rejecting argument that "brokers are somehow different, and that Congress must necessarily have intended for them to be insulated" from liability as "miss[ing] the forest for the trees").

represent just the sort of "uncritical literalism" against which the Supreme Court has cautioned. *Dan's City*, 569 U.S. at 260.  As such, Vitek's negligence claims are not preempted.

### IV. Failure to State a Claim Against C.H. Robinson

Nevertheless, Vitek's claim against C.H. Robinson will be dismissed because he has not alleged any culpable conduct on the part of C.H. Robinson.  Though C.H. Robinson is Freightquote's corporate parent, it is axiomatic that a corporate parent will not be held liable for its subsidiary's actions absent specific circumstances justifying the piercing of the corporate veil. *C.f. Antonio v. Sec. Servs. of Am., LLC*, 701 F. Supp. 2d 749 (D. Md. 2010).  Vitek has not alleged any such circumstances here.  Therefore, Vitek will be limited to pursuing his negligence claim against Freightquote alone.

### V. Conclusion

For the foregoing reasons, an order shall enter granting Defendants' motion to dismiss as to C.H. Robinson and denying Defendants' motion to dismiss as to Freightquote.

DATED this 27th day of April, 2020.

BY THE COURT:

/s/
James K. Bredar
Chief Judge